**UNITED STATES of America, Plaintiff,**

v.

**Lee TAI–HSING, and Jen Kuo–Sen, Defendants.**

**Crim. No. 90–35–FR.**

United States District Court, D. Oregon.

May 21, 1990.

Charles H. Turner, U.S. Atty., Kent S. Robinson, Asst. U.S. Atty., Portland, Or., for plaintiff.

Gareld Joel Gedrose, Portland, Or., for defendant Lee Tai–Hsing.

W. Mark McKnight, Portland, Or., for defendant Jen Kuo–Sen.

## OPINION

FRYE, District Judge:

The following motions are pending:

1. defendant Jen Kuo–Sen's motion for additional and individual preemptory challenges;

2. Jen Kuo–Sen's motion to suppress evidence;

3. Jen Kuo–Sen's motion to dismiss the indictment;

4. Jen Kuo–Sen's motion for a bill of particulars; and

5. defendant Lee Tai–Hsing's motion to suppress evidence.

## BACKGROUND

The indictment charges that Lee Tai–Hsing and Jen Kuo–Sen "did knowingly and unlawfully possess falsely made, forged, altered and counterfeited securities, moving as and which were a part of and constituted foreign commerce. Said securities were eight bank drafts, each in the amount of $100,000 purportedly drawn on the account of First Commercial Bank of Taiwan, Republic of China, at Citibank, Buffalo, New York. Said securities had been carried by the defendants in foreign commerce on Delta Airlines Flight 50, from Taipei, Taiwan, to Portland, Oregon; all in violation of Title 18, United States Code, Sections 2315 and 2."

### 1. *Jen Kuo–Sen's Motion for Additional Challenges*

■ Jen Kuo–Sen moves the court for an order allowing him ten preemptory challenges, and allowing him to make such challenges in addition to and independent from any challenges made by co-defendant, Lee Tai–Hsing. Counsel for Jen Kuo–Sen submits an affidavit in support of the motion in which he details his skill in trial advocacy, including studying trial advocacy in law school under the Honorable Robert P. Jones, former Multnomah County Circuit Court Judge, now Judge of the United States District Court. Counsel for Jen Kuo–Sen argues that without the benefit of an effective voir dire examination and a sufficient number of preemptory challenges, the jurors selected will be unable to understand the complexities of this case.

The government responds that this is not a sufficiently novel or complex case to warrant a departure from the court's regular procedures for jury selection, but agrees that the court has the discretion to allow additional preemptory challenges if it wishes.

The court concludes that there is no basis for it to depart from the usual and regular jury selection procedure. If defendants wish to exercise their preemptory challenges independently from each other, they are free to do so. However, Jen Kuo–Sen's motion for additional challenges is denied.

### 2. *Jen Kuo–Sen's Motion to Suppress Evidence*

■ Jen Kuo–Sen moves the court to suppress any and all evidence derived from a search of his person and property on January 27, 1990 for the reasons stated in the attached memorandum of law.

No evidence of any search was presented to the court. Jen Kuo–Sen's motion to suppress evidence derived from a search of his person and property on January 27, 1990 is denied.

### 3. *Jen Kuo–Sen's Motion to Dismiss*

Jen Kuo–Sen moves the court to dismiss the indictment on the grounds that 18 U.S.C. § 2315 is unconstitutionally void for vagueness. Jen Kuo–Sen argues that section 2315, under which he is charged, is an example of a proscription duplicitous with 18 U.S.C. § 480. Jen Kuo–Sen asserts that the mandate of the due process clause of the United States Constitution concerning vague statutes and unlimited prosecutorial discretion renders the application of section 2315 to his case improper.

The government argues that section 480 is not applicable to this case because the allegedly false securities were not issued by a bank of a foreign country.

Section 480 provides:

Whoever, within the United States, knowingly and with intent to defraud, possesses, or delivers any false, forged, or counterfeit bond, certificate, obligation, security, treasury note, bill,

promise to pay, bank note, or bill *issued by a bank or corporation of any foreign country*, shall be fined not more than $1,000 or imprisoned not more than one year, or both. (Emphasis added).

Section 2315 provides, in part:

Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any falsely made, forged, altered, or counterfeited securities or tax stamps, or pledges or accepts as security for a loan any falsely made, forged, altered, or counterfeited securities or tax stamps, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been so falsely made, forged, altered, or counterfeited ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Initially, the government argues that section 480 cannot be used to charge Jen Kuo–Sen because the securities at issue were not "issued by a bank ... of [a] foreign country." The government explains that, as the indictment states, the bank drafts at issue were purported to be drawn on a United States Bank, namely Citibank of Buffalo, New York. While the account holder at Citibank was the First Commercial Bank of Taiwan, the bank drafts were United States checks, drawn on a United States bank, in United States dollars. The government explains that First Commercial Bank of Taiwan simply maintains an account at Citibank, much like millions of other individuals and business entities.

Jen Kuo–Sen argues that technically the bank drafts were issued by the First Commercial Bank of Taiwan and meet the requirements of section 480 as "issued by a bank ... of any foreign country." Jen Kuo–Sen cites the definition of "issue" from *Webster's New Collegiate Dictionary* and *Black's Law Dictionary*.

While Jen Kuo–Sen argues that section 480 applies to the charge against him, he does not contend that section 2315 does not apply to the charge against him. Assuming that section 480 applies, there are no grounds upon which to dismiss the indictment.

A criminal statute is invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954). The fact that particular conduct may violate two statutes does not detract from the notice required by each. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the due process clause are satisfied. *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979). The conduct proscribed by section 2315 is not unconstitutionally vague.

Again, conceding without deciding that the acts alleged against Jen Kuo–Sen violate both section 480 and section 2315, these sections have different elements. Section 2315 requires proof that the bank drafts moved as or were part of interstate or foreign commerce. This element of section 2315 is not required by section 480.

When conduct of a person violates more than one criminal statute, the government may prosecute that person under either statute so long as the government does not discriminate against any class of defendants. *United States v. Beacon Brass Co.*, 344 U.S. 43, 45–46, 73 S.Ct. 77, 78–79, 97 L.Ed. 61 (1952). Whether to prosecute and what charge to file or bring before the grand jury are decisions that rest in the discretion of the prosecutor. *United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974). Once it is determined that the proof will support a conviction under either of two statutes, it is within the prosecutor's discretion to choose which to charge. *United States v. Batchelder*, 442 U.S. at 125, 99 S.Ct. at 2204–05.

Jen Kuo–Sen's motion to dismiss is denied.

### 4. *Jen Kuo–Sen's Motion for a Bill of Particulars*

Jen Kuo–Sen moves the court for a bill of particulars as to 1) the manner

in which the government plans to prove that the alleged securities were moving as a part of commerce; 2) whether the government is alleging that possession of the alleged securities in the airport constitutes moving as a part of commerce; and 3) whether the government is affirmatively alleging that the bank drafts were not issued by a foreign government.

The government answers that the indictment adequately contains a full and complete statement of the offense sufficient to enable Jen Kuo–Sen to prepare a defense and to plead double jeopardy in any subsequent prosecution.

The indictment alleges that Jen Kuo–Sen and Lee Tai–Hsing carried securities in foreign commerce on Delta Airlines flight 50, from Tapei, Taiwan to Portland, Oregon. This adequately explains the government's intent as to moving in foreign commerce. There are no grounds upon which this court would order the government to state affirmatively whether it is asserting that the securities were not issued by a foreign government.

Jen Kuo–Sen's motion for a bill of particulars is denied.

### 5. *Lee Tai–Hsing's Motion to Suppress*

Lee Tai–Hsing moves to suppress statements made by him at the time of his arrest on the grounds that they were made in violation of his fifth amendment right against self-incrimination and that they were made without the advice of counsel. Lee Tai–Hsing has not filed a memorandum in support of this motion.

Lee Tai–Hsing was the subject of a valid detention as he attempted to clear United States customs and enter the United States. Lee Tai–Hsing was referred to the secondary customs inspection station as a part of a routine and reasonable inquiry. He was not in custody or subject to arrest at this time and was not entitled to *Miranda* warnings.

After the customs agent found a $100,000 bank draft in Lee Tai–Hsing's briefcase and a second passport, Lee Tai–Hsing was escorted to a separate room for a pat-down search. A third passport was then found on Lee Tai–Hsing's person. This passport contained a photo of Jen Kuo–Sen. Lee Tai–Hsing was then returned to the secondary inspection station and placed in an interrogation room. Shortly thereafter, the customs inspector arrived in the interrogation room and found that the bank draft he had found earlier in Lee Tai–Hsing's possession was missing. Lee Tai–Hsing denied any knowledge of its location. Lee Tai–Hsing was then strip-searched by the agents.

At this time, a passport was found in Jen Kuo–Sen's possession. This passport contained a photo of Lee Tai–Hsing. Lee Tai–Hsing was then advised of his *Miranda* rights and placed under arrest. The bank draft was later found secreted in the interrogation room where Lee Tai–Hsing was being held.

Lee Tai–Hsing was not free to leave the airport without having cleared the customs inspection. During the process of investigating Lee Tai–Hsing, evidence was found by customs agents, and Lee Tai–Hsing made statements to customs agents regarding that evidence. At the time that the government officials believed that they had probable cause to place Lee Tai–Hsing under arrest, he was advised of his *Miranda* rights. The court finds that Lee Tai–Hsing's right against self-incrimination was not violated by this procedure. Lee Tai–Hsing was not coerced into making any statements. The only evidence is that his statements were freely and voluntarily made.

Lee Tai–Hsing's motion to suppress evidence is denied.

### CONCLUSION

1. Jen Kuo–Sen's motion for additional and individual preemptory challenges is denied;

2. Jen Kuo–Sen's motion to suppress evidence is denied;

3. Jen Kuo–Sen's motion to dismiss the indictment is denied;

4. Jen Kuo–Sen's motion for a bill of particulars is denied; and

5. Lee Tai–Hsing's motion to suppress evidence is denied.